IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIEN LEE,                                               No. C 04-2637 SBA

        Plaintiff,                                  **ORDER**

  v.

SUSAN A. BENDER, et al.,

        Defendants.
_____/

This matter comes before the Court on Defendants Susan A. Bender, Christine Brigagliano, and Van Der Hout, Brigagliano & Nightingale LLP's Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1); Defendant Norman A. McKenzie's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1); and Defendants Susan A. Bender, Christine Brigagliano, and Van Der Hout, Brigagliano, & Nightingale LLP's Request for Judicial Notice.

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the Motions to Dismiss of Susan A. Bender, Christine Brigagliano, Van Der Hout, Brigagliano & Nightingale LLP, and Norman McKenzie. The Court also GRANTS the Request for Judicial Notice of Susan A. Bender, Christine Brigagliano, and Van Der Hout, Brigagliano & Nightingale LLP.

**BACKGROUND**

**A.    Factual Background[1]**

In early 2002, Plaintiff was engaged in a custody proceeding against Defendant Norman A. McKenzie ("McKenzie") before the Alameda Superior Court. First Amended Complaint ("FAC") ¶ 5. On March 22, 2002, McKenzie, through his attorneys, Defendant Susan A. Bender ("Bender") and Defendant

---

[1]The following facts are taken from Plaintiff's First Amended Complaint.

Christine Brigagliano[2] ("Brigagliano"), demanded that the court order Plaintiff to cooperate with Brigagliano in the preparation of an advisory opinion on Plaintiff's immigration status. *Id.* On or about April 4, 2002, McKenzie told Plaintiff that he would "pay the fees" if Plaintiff cooperated with Brigagliano by providing Brigagliano with full details and documentation regarding Plaintiff's immigration status. *Id.* ¶ 6. On April 5, 2002, Brigagliano sent an advisory opinion to Bender. *Id.* ¶ 8. Plaintiff was not aware of the fact that Bender had been provided with an advisory opinion. *Id.* ¶ 8. Plaintiff's understanding was that she was required to provide an advisory opinion to the court on or before June 8, 2002. *Id.* ¶ 17.

Plaintiff contacted Brigagliano, Bender, and McKenzie several times between April 5, 2002 to May 23, 2002 to verify whether Bender and McKenzie had authorized Brigagliano to render an opinion. *Id.* ¶ 9. Bender responded by requesting that Plaintiff "sign the documents to do what Ms Brigagliano [*sic*] had said was to be avoided." *Id.* Plaintiff responded only by stating that she already had a stipulation with McKenzie that she was unable to legally work in the United States "due to immigration difficulties." *Id.* ¶ 10. Throughout May and June 2002, Bender and McKenzie informed the Alameda Superior Court that Plaintiff had refused to cooperate or comply with the court's orders. *Id.* ¶ 12. Plaintiff eventually retained her own immigration attorney and provided the court with her attorney's report on July 15, 2002. *Id.* ¶ 14.

Plaintiff was given the opportunity to present her case-in-chief in the custody proceeding for two hours on July 30, 2002. *Id.* ¶ 34. McKenzie, through his attorney Bender, was given the opportunity to present his case-in-chief in the custody proceeding on August 1, 2002 and September 26, 2002. *Id.* ¶ 30. On September 29, 2002, McKenzie telephoned Plaintiff's friend, Stanley Sprague, and informed him that the Commissioner would be terminating the trial on October 1, 2002. *Id.* ¶ 42. Although Plaintiff had planned to call an expert witness to the stand on October 3, 2002, Commissioner Rodrigue terminated the trial on October 1, 2002. *Id.* ¶ 43. This was apparently due to the Commissioner's belief that the parties had reached settlement. *Id. ¶ 53.* Plaintiff, however, repeatedly stated on the record throughout October 2002 that "there was no agreement." *Id.* ¶ 62. Plaintiff refused to enter into a stipulation with McKenzie

---

[2]Brigagliano is an immigration attorney with the law firm of Van Der Hout, Brigagliano & Nightingale LLP. FAC ¶ 5.

because the Commissioner had previously "thrown out . . . every single stipulation ever made by the parties . . . ." *Id.* ¶ 64.

The trial was later reinstated and McKenzie continued the presentation of his case-in-chief on October 23, 2002. *Id.* ¶ 30. The trial was then on hiatus until April 16, 2003. *Id.* ¶¶ 30, 45. McKenzie continued presenting his case on April 16 and April 17, 2003. *Id.* ¶ 30. On April 16, 2003, Commissioner Rodrigue directed Plaintiff to produce "potentially incriminating employment testimony." *Id.* ¶ 45.

On June18, 2003, a contempt proceeding was held before Presiding Judge Dan Grimmer of the Family Court division of Alameda Superior Court. *Id.* ¶ 49. Plaintiff was held in contempt of court and incarcerated for approximately two weeks. *Id.* ¶¶ 49-51. Plaintiff filed a *habeus* petition relating to her confinement. *Id.* ¶ 54.

Trial continued on June 30, 3003, July 6, 2003, and July 9, 2003. *Id.* ¶ 30. On July 9, 2003, Plaintiff was given a fifteen-minute opportunity to present her case. *Id.* ¶ 30. After that date, the trial was on hiatus again for several months. *Id.* ¶ 30.

In January 2004, Plaintiff petitioned the California Court of Appeals for a writ of mandate directing the trial court to grant a "meaningful hearing." *Id.* ¶ 31. Plaintiff's writ was summarily denied. *Id.* On February 4, 2004, Commissioner Rodrigue stated that the trial would continue on April 12-15, 2004. *Id.* ¶ 32.

On February 18, 2004, Commissioner Rodrigue ordered McKenzie to pay Plaintiff $5,500 for attorney's fees. *Id.* ¶ 85. McKenzie did not comply with the order. *Id.* ¶ 86. On April 12, 2004, Bender claimed that she was unaware of the court's February 18, 2004 order. *Id.* ¶ 87. However, on March 4, 2004, Plaintiff had filed a motion for reconsideration of the February 18, 2004 order and had served her motion on Bender. *Id.* ¶ 93. Further, on April 7, 2004, Bender had filed a pleading asking the court to affirm the February 18, 2004 order. *Id.* ¶ 88. Commissioner Rodrigue later informed the parties that McKenzie's failure to pay the fees was Plaintiff's fault because Plaintiff had failed to provide McKenzie with the name of her attorney. *Id.* ¶¶ 89-90.

3

On or around April 12-15, 2004, Plaintiff reported Commissioner Rodrigue to a review board for misconduct. *Id.* ¶ 67. The reviewing judges investigated Plaintiff's allegations but apparently concluded that they were unfounded. *Id.* ¶ 67.

On July 26, 2004, Commissioner Rodrigue issued a tentative custody decision in which she ruled that the advisory immigration opinion was no longer relevant and that Plaintiff had not, in fact, been ordered to verify her immigration status directly with the INS. *Id.* ¶ 68.

On August 6, 2004, Plaintiff filed a motion to disqualify Commissioner Rodrigue.[3] *Id.* ¶ 80. Plaintiff alleged that Commissioner Rodrigue had made "false and erroneous fact-findings." *Id.* ¶ 80. On August 13, 2004, Plaintiff filed a supplemental memorandum concerning Commissioner Rodrigue's "tentative decision's falsehoods." *Id.* ¶ 80. Commissioner Rodrigue reviewed Plaintiff's memoranda but ordered them stricken from the record. *Id.* ¶ 81. Commissioner Rodrigue also declined to disqualify herself. *Id.* ¶ 81. On September 7, 2004, Commissioner Rodrigue issued her final decision. *Id.* ¶ 81. Commissioner Rodrigue removed the evidentiary findings Plaintiff objected to from her final decision. *Id.* ¶ 81.

In November 2004, McKenzie moved for sanctions against Plaintiff. *Id.* ¶ 106. Plaintiff also filed a motion for sanctions against McKenzie and Bender. *Id.* ¶¶ 106-108. In her motion, Plaintiff alleged that McKenzie and Bender had committed perjury when they represented to the court in 2002 that they were not in possession of an advisory opinion concerning Plaintiff's immigration status. *Id.* ¶¶ 109-110. Commissioner Rodrigue heard both motions on November 12, 2004. *Id.* ¶ 106. After considering Plaintiff's motion for sanctions, Commissioner Rodrigue rejected Plaintiff's arguments and informed Plaintiff that the issue of her immigration status was rendered "moot" due to the fact that Plaintiff had indicated that she wanted to return to Singapore regardless of her immigration status. *Id.* ¶ 111. Commissioner Rodrigue issued a written ruling concerning the motions for sanctions on February 10, 2005. *Id.* ¶¶ 53-54.

**B.     Procedural Background**

---

[3] At some point during this time period, Plaintiff also reported Bender to the California State Bar. *Id.* ¶ 26. The State Bar apparently declined to take action against Bender. *Id.*

4

On June 30, 2004, Plaintiff filed a Complaint against McKenzie, Bender, Brigagliano, and Van Der Hout, Brigagliano & Nightengale LLP (hereinafter "VBN") (collectively, "Defendants") for alleged violations of 42 U.S.C. § 1983 and for various state law causes of action. On January 10, 2005, McKenzie, Bender, Brigagliano, and VBN filed motions to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

On February 9, 2005, the Court granted Defendants' motions to dismiss. The Court found that Plaintiff had failed to state a claim under 42 U.S.C. § 1983 because she had not set forth any facts that sufficiently alleged that Defendants, who are not state actors or entities, conspired with Commissioner Rodrigue to commit any alleged civil rights violations. The Court also found that it did not have jurisdiction over Plaintiff's remaining claims, which were all brought under state law. Although Plaintiff was granted leave to file an amended complaint, she was specifically instructed to set forth facts demonstrating her entitlement to relief under 42 U.S.C. § 1983. Plaintiff was warned that it would not be sufficient to merely allege, in summary fashion, that Defendants entered into a conspiracy with Commissioner Rodrigue. Plaintiff was further warned that her failure to comply with the Court's February 9, 2005 Order could result in *sua sponte* dismissal of the complaint with prejudice.

On March 11, 2005, Plaintiff filed her First Amended Complaint. Plaintiff's First Amended Complaint alleges the following federal and state law causes of action: (1) violation of 42 U.S.C. § 1983 for "loss of liberty interest"; (2) violation of 42 U.S.C. § 1983 for "loss of filial consortium"; (3) violation of 42 U.S.C. § 1983 for deprivation of First, Fifth, and Fourteenth Amendment rights; (4) violation of 42 U.S.C. § 1983 for "malicious prosecution"; (5) violation of 42 U.S.C. § 1983 for "abuse of process"; (6) abuse of process; (7) malicious prosecution; (8) malpractice; (9) fraud, deceit, and misrepresentation; (10) professional negligence; (11) intentional infliction of emotional distress; (12) willful misconduct; (13) reckless indifference; (14) gross negligence; (15) negligence; (16) aiding and abetting torts; and (17) civil conspiracy. On March 21, 2005, Plaintiff filed a document entitled "Correction to Plaintiff's First Amended Complaint," through which Plaintiff sought to make certain non-material changes to her First Amended Complaint.

On March 24, 2005, Defendants Bender, Brigagliano, and VBN filed a Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. On March 28, 2005, Defendant McKenzie filed a Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

On April 12, 2005, without seeking leave of this Court, Plaintiff filed a document entitled "Amendment to First Amended Complaint" (hereinafter, "Amendment"). The Amendment seeks to add sixteen new paragraphs to the First Amended Complaint. Attached to the Amendment is an excerpt from an undated transcript.

## **LEGAL STANDARDS**

**A.     Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001). "'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.'" *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)). In adjudicating such a motion, the court is not limited to the pleadings, and may properly consider extrinsic evidence. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**B.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v. American*

*Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile." *DeSoto Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. *Id.* First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). Second, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Id.* at 688-89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

**C.    42 U.S.C. § 1983**

"Actions may be brought pursuant to 42 U.S.C. § 1983 to redress constitutional violations under color of state law. Private parties act under color of state law if they willfully participate in joint action with

state officials to deprive others of constitutional rights. Private parties involved in such a conspiracy may be liable under section 1983." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989) (citations omitted); *see Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

To prove a conspiracy between the state and private parties under section 1983, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Phelps Dodge Corp.*, 865 F.2d at 1540-1541. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Id*. Conclusory allegations of a conspiracy are insufficient. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

## ANALYSIS

**A.  Plaintiff's Failure to Comply with the Court's February 9, 2005 Order**

On February 9, 2005, this Court dismissed Plaintiff's Complaint because Plaintiff had failed to state a federal cause of action against Defendants, all of whom are unquestionably private persons and entities. The Court noted that private parties could be held liable under 42 U.S.C. § 1983 if they willfully participated in a joint action with a state official to deprive others of their constitutional rights, *see Phelps Dodge Corp.*, 865 F.2d at 1540, but found that Plaintiff had failed to allege the existence of any such conspiracy between Defendants and Commissioner Rodrigue. Since Plaintiff had failed to state a federal cause of action, the Court concluded that it lacked jurisdiction over Plaintiff's twelve other state law claims. *See Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

Plaintiff was granted leave to amend her Complaint so long as she complied with the following specific instructions:

> Plaintiff is granted leave to file an amended complaint in accordance with this Order. If Plaintiff chooses to file an amended complaint, she must allege, *in good faith*, additional *facts—not* merely conclusions of law—that demonstrate that she is entitled to relief. Plaintiff may not, for example, allege in summary fashion that Defendants entered into a conspiracy with Commissioner Rodrigue; rather, she must allege not only that such a conspiracy existed, but also the *facts* establishing an agreement to commit the alleged improper actions between *each of the Defendants* that she claims entered into said conspiracy.

8

1  Feb. 9, 2005 Order at p. 6.  Upon a close review of Plaintiff's First Amended Complaint, it is apparent that
2  Plaintiff has failed to comply with the February 9, 2005 Order.

3        Similar to Plaintiff's original Complaint, the First Amended Complaint sets forth five "federal" causes
4  of action against Defendants, which are all purportedly brought under 42 U.S.C. § 1983, and twelve state
5  law causes of action.  Out of the five allegedly "federal" causes of action, however, only two (the first cause
6  of action and the third cause of action) seek to redress alleged constitutional violations.  The other three §
7  1983 claims – "loss of filial consortium," "malicious prosecution," and "abuse of process" – are actually state
8  law claims.  The first and third causes of action, however, are insufficient to state a claim under § 1983
9  against any of the Defendants.

10        Specifically, in the 132 paragraphs alleged in support of Plaintiff's first and third "federal" causes of
11  action, Plaintiff essentially alleges that Commissioner Rodrigue violated her First, Fifth, and Fourteenth
12  Amendment rights by "preventing [her] from presenting her case [in the custody proceedings] and [from]
13  exposing Ms Bender [*sic*] and Mr. McKenzie's *prima facie* cases of deceit, perjury, suborning perjury,
14  and misdemeanor . . . ."  FAC at ¶ 15(a).  Like the original Complaint, much of the First Amended
15  Complaint is focused on the allegedly deceitful behavior of McKenzie and Bender.  In contrast, Brigagliano
16  and her firm, VBN, appear to be mentioned in the First Amended Complaint solely because they were the
17  ones responsible for preparing the immigration opinion that McKenzie and Bender allegedly withheld from
18  the Court.  To the extent that this Court is able to correctly construe the allegations of the First Amended
19  Complaint, which is made difficult by its prolix nature and confusing structure, it is apparent that the First
20  Amended Complaint does not actually allege that Brigagliano or VBN engaged in any conspiratorial civil
21  rights violations with Commissioner Rodrigue.  *See* FAC ¶¶ 15, 29, 35, 40, 41-45, 53, 66-67, 71, 83, 98,
22  108, 112-113, 122, 125, 127, 130.  In fact, at paragraph 130 of the First Amended Complaint, Plaintiff
23  affirmatively states: "This civil rights case pertains to **Ms Bender** [*sic*] and **Mr. McKenzie's** 'meeting of the
24  minds' with the Commissioner to violate constitutional rights as necessary to shield them from criminal and
25  professional sanctions."  *Id.* ¶ 130 (emphasis added).  There is no mention of either Brigagliano or VBN.
26  Accordingly, Plaintiff has failed to state a federal cause of action against Brigagliano or VBN, and this

Court lacks jurisdiction over Plaintiff's claims against them.

With respect to the claims against McKenzie and Bender, the allegations in the First Amended Complaint are still insufficient to elevate McKenzie and Bender to state actors. When this Court reviewed Plaintiff's initial Complaint, the Court observed that the gravamen of Plaintiff's Complaint was that Commissioner Rodrigue had issued various adverse rulings and findings against Plaintiff in the state court custody proceedings. *See* Feb. 9, 2005 Order at p. 6. Although Plaintiff asserted that such rulings were the result of a conspiracy between the Commissioner, Bender, and McKenzie, to "unlawfully" terminate the custody trial, wrongfully institute contempt proceedings against Plaintiff, and conceal perjury, the Court noted that Plaintiff had failed to set forth any facts showing that Commissioner Rodrigue, Bender, or McKenzie actually had an agreement to commit such acts. *Id.* at pp. 2, 5-6. The Court warned Plaintiff that "[a] conspiracy cannot be found from allegations of judicial error, ex parte communications . . . or adverse rulings absent *specific facts demonstrating an agreement to commit the alleged improper actions*." *Id.*; *see Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) (emphasis added).

Plaintiff has now tried to rectify these deficiencies by adding the term "meeting of the minds" to the same allegations contained in her initial Complaint. This is precisely what the Court instructed Plaintiff not to do. In fact, although the First Amended Complaint is replete with references to a "meeting of the minds," it does not set forth *any* facts that show that Commissioner Rodrigue, Bender, or McKenzie actually had a "meeting of the minds" or a common objective. Plaintiff's own conclusion that Commissioner Rodrigue, Bender, and McKenzie must have had a "meeting of the minds," merely because she cannot imagine otherwise, is not sufficient to state a claim under 42 U.S.C. § 1983. *Woodrum*, 866 F.2d at 1126. Moreover, Plaintiff's opinions and legal arguments are not "factual" allegations that may be considered by this Court. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations).

Additionally, Plaintiff's own allegations make clear that further amendments to the First Amended Complaint would be futile because: (1) Plaintiff has admitted that she has no actual knowledge of or

10

evidence that there were any extra-judicial agreements between Commissioner Rodrigue, Bender, and McKenzie; and (2) Plaintiff has admitted that Commissioner Rodrigue, Bender, and McKenzie did not, in fact, share a common objective. First, with respect to Plaintiff's ability to prove her case, Plaintiff states that she does not have any documentary or other evidence to prove that Bender or McKenzie "had extra-judicial contact or agreement with the Commissioner." FAC at ¶ 127.[4] Second, with regard to her "meeting of the minds" allegations, Plaintiff admits at paragraph 35 of the First Amended Complaint that the Commissioner, Bender, McKenzie had completely different motives. FAC ¶ 35. In fact, Plaintiff states that "the Commissioner's motivation was simply to get [Plaintiff] to abandon [her] case . . . [in order to] reduce her workload," whereas Bender and McKenzie's motivation was "to avoid exposure of their misconduct." *Id.* This statement is fatal to Plaintiff's assertion that Commissioner Rodrigue, Bender, and McKenzie had a "meeting on the minds" within the meaning of a § 1983 claim. *See Woodrum*, 866 F.2d at 1126 (to establish liability, each participant in the conspiracy must at least share the common objective of the conspiracy).

### 1. Dismissal of the First Amended Complaint With Prejudice.

As is required in the Ninth Circuit, this Court provided Plaintiff with notice of the deficiencies in her initial Complaint and provided her with an opportunity to amend the Complaint effectively. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *see also Noll v. Carlson*, 809 F.2d 1446, 1448-9 (9th Cir. 1987) ("The district court need only draft a few sentences explaining the deficiencies and should not have to act as an advocate for the *pro se* litigant."). Having given Plaintiff a fair opportunity to plead a cognizable federal claim, and having concluded that Plaintiff has failed to comply with the Court's directives, the Court may dismiss Plaintiff's First Amended Complaint with prejudice. *See, e.g., Ricotta v. State of California*, 4 F.Supp.2d 961, 979 (S.D. Cal. 1998).

---

[4] Plaintiff's proposed "Amendment" to the First Amended Complaint lends additional support to the conclusion that further amendments would be futile. Although this Court was not required to do so, it reviewed Plaintiff's proposed Amendment in order to determine whether Plaintiff was in possession of any new facts that would be sufficient to state a claim under § 1983. However, like the First Amended Complaint and its predecessor, the Amendment is riddled with conclusory allegations and legal argument and devoid of any of the necessary factual allegations.

11

1  At best, Plaintiff's First Amended Complaint asserts a litany of state law causes of action that Plaintiff is free to litigate in state court. Indeed, Plaintiff *is* currently litigating the same claims against Defendants in Alameda Superior Court. *See* Def's Request for Judicial Notice at Exs. A-E. Since it is clear from the pleadings submitted to the Court, including Plaintiff's First Amended Complaint and proposed Amendment, that Plaintiff cannot allege a federal cause of action against Defendants and that any further leave to amend would be futile, the Court hereby concludes that it lacks subject matter jurisdiction over this action and dismisses Plaintiff's First Amended Complaint with prejudice.

**B.    Defendants' Request for Judicial Notice.**

Defendants Bender, Brigagliano, and VBN have requested that the Court take judicial notice of the following documents filed in support of their opposition to their motions to dismiss the initial Complaint: (1) the Notice of Motion and Motion to Dismiss filed by Bender, Brigagliano, and VBN; (2) the Request for Judicial Notice filed in support of Bender, Brigagliano, and VBN's Motion to Dismiss; (3) the Declaration of Susan A. Bender; (4) the Declaration of Christine Brigagliano; (5) the Reply brief of Bender, Brigagliano, and VBN; (6) Plaintiff's Opposition brief; (7) Exhibits C-E of Plaintiff's Request for Judicial Notice; and (8) the Court's Order granting the Motion to Dismiss.

Defendants Bender, Brigagliano, and VBN have also requested that the Court take judicial notice of the following documents filed in the Superior Court of Alameda County: (1) Special Motion to Strike filed by Bender, Brigagliano, and VBN; (2) Plaintiff's Opposition to the Motion to Strike; (3) Bender, Brigagliano, and VBN's Reply brief in support of Motion to Strike; (4) the Alameda Superior Court's tentative ruling regarding Bender, Brigagliano, and VBN's Motion to Strike; (5) the Alameda Superior Court's Minutes relating to the Motion to Strike; and (6) Commissioner Rodrigue's Order Regarding Petitioner's and Respondent's Motions for Sanctions.

Court filings and orders are the type of documents that are properly noticed under Federal Rule of Evidence 201. Notice can be taken, however, "only for the limited purpose of recognizing the 'judicial act' that the order [or filing] represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d

1384, 1388 (2d Cir.1992)); *see also General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082, n. 6 (7th Cir.1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth [of the matter] asserted therein because these findings are disputable and usually are disputed"); *San Luis v. Badgley*, 136 F.Supp.2d 1136, 1146 (E.D.Cal.2000) (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings"). Applying this standard, to the extent that Defendants seek to have the Court take judicial notice of the existence of the requested documents, the Request for Judicial Notice is GRANTED.

**CONCLUSION**

The Court hereby GRANTS the following motions: (1) the Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) of Defendants Susan A. Bender, Christine Brigagliano, and Van Der Hout, Brigagliano, and Nightingale LLP; and (2) the Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) of Defendant Norman A. McKenzie. The Request for Judicial Notice of Susan A. Bender, Christine Brigagliano, and Van Der Hout, Brigagliano, and Nightingale LLP is also GRANTED. Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE. All pending matters are TERMINATED and the clerk is directed to close the file.

IT IS SO ORDERED.

Dated: 5/11/05                     s/Saundra Brown Armstrong
                                   SAUNDRA BROWN ARMSTRONG
                                   United States District Judge